IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN K. SPENCER, <br> Plaintiff, | ) <br> ) <br> ) |
| v. | )      04 C 5048 <br> ) |
| OFFICER JOSPEH DAWSON, et al., <br> Defendants. | ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

Plaintiff Steven Spencer, who is deaf, was charged with resisting arrest and assaulting a peace officer. After he was acquitted, he filed suit against the Village of Wheeling and the Wheeling police officers who had arrested him, asserting that the officers used excessive force, violated the Fourth and Fourteenth Amendments by entering his home without a warrant, intentionally inflicted emotional distress upon him, and violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which outlines the responsibilities of law enforcement personnel when dealing with hearing impaired individuals. The defendants seek to dismiss or strike portions of Spencer's complaint. For the following reasons, the motion is granted in part and denied in part.

I.  **Background**

For the purposes of this opinion, the court will accept the allegations of the complaint as true. Plaintiff Steven Spencer is deaf and communicates primarily through the use of sign language. He taught himself to speak and can occasionally read the lips of people who speak to him. He also uses a teletypewriter (TTY) device attached to his telephone. Spencer and his former girlfriend, Aliza Meyer, who is also deaf, co-owned a trailer home in Wheeling, Illinois.[1]

---

[1] Because Aliza Meyer's father is a central figure in the events underlying Spencer's complaint, the court will refer to Aliza using her first name to avoid confusion between the two Meyers.

On March 25, 2003, Spencer was "peacefully ensconced" in the trailer when Aliza's father arrived uninvited and unannounced. Meyer told Spencer that he had not called ahead because he wanted to "force the issue" of selling the trailer since Spencer and Aliza had split up. Aliza subsequently came over and began to argue with Spencer. Meyer ordered his daughter to leave and the already heated conversation between the two men escalated until Spencer ordered Meyer to leave.

When Meyer refused to do so, Spencer called 911 using the TTY device attached to his phone. This caused Meyer to leave the trailer. Spencer stayed on the line with the 911 operator until the police arrived. In approximately five to ten minutes, Officers Dawson and Conway entered the trailer accompanied by Meyer. Spencer was very distressed at Meyer's reappearance in the trailer and immediately told Meyer to leave.

According to Spencer, the police were dismissive of his feelings about Meyer's presence in the trailer and thus made the "heartless" suggestion that Meyer should stay and help Spencer read their lips. In response, Spencer told the officers he could communicate by himself. The officers then ordered Meyer to leave and "cavalierly asked [Spencer] what he wanted to do about the situation." Spencer advised the officers that he wanted to file a charge of trespass against Meyer.

The officers left the trailer to speak with Meyer, who was outside. As time passed, Spencer began to pace back and forth in the trailer and became progressively more agitated. After approximately fifteen minutes, the officers entered the trailer with Aliza. Conway grabbed Spencer's arm and spoke to him. Spencer paid close attention to Conway's lips to make sure that Conway was not placing him under arrest. When he realized Conway was telling him to calm

down, Spencer broke free and resumed his pacing. Spencer walked approximately six feet from Conway and said, using sign language and his voice, "You just assaulted me!"

Conway's face turned red and he began to angrily speak to Spencer. Spencer could not understand Conway because Conway was speaking too fast, but was dissatisfied with the officers and told them to leave, again using sign language and his voice. Conway then "used his presence in an intimidating manner" and "kept trying to get into Spencer's face, saying something repeatedly." Spencer eventually figured out that Conway was telling him to put his hands down and signed, "No! I have a right to sign! And you just assaulted me!"

Conway and Dawson conferred and Dawson sprayed Spencer with pepper spray. The officers left while the spray settled and Spencer attempted to telephone for medical assistance as his eyes were swollen shut from the spray and he was in great pain. Officer McInerney, another officer who had been summoned to the scene, entered the trailer with Conway and Dawson. Spencer pleaded with the officers not to hurt him, but the officers nevertheless slammed him to the floor, brutally battered him, and handcuffed him. Spencer attempted to extend his palms out behind him so someone could sign into them and tell him what was happening, but no one did so.

Spencer sensed that he was being removed from the trailer on a gurney and continued to panic since he did not know where he was going or what was happening. He was strapped down to the gurney and taken to an unknown location. Eventually, someone signed into his hand and told him he was at the hospital and would receive eye drops. Feeling safer due to his ability to communicate, Spencer cooperated, received the drops, and had the restraints removed.

Kim, the hospital employee who was speaking with Spencer using sign language, asked Spencer if he knew he was under arrest. Spencer told her he did not know this and asked Kim to

find out what the charges were. The officers refused to tell Kim, stating that Spencer would receive an explanation at the Wheeling Police Station. The hospital advised the officers that they had to handcuff Spencer with his hands in front of him so he could communicate and after some delay, the officers did so.

At the police station, Spencer had difficulty communicating with the officers but eventually understood that he had been charged with resisting arrest and assaulting a peace officer. He did not, however, understand the basis of the charges. The officers were unable to communicate effectively with him and instead pointed at their ears as if to indicate that Spencer should listen to them speak. After a jury trial, Spencer ultimately was acquitted of all charges.

In his four count complaint, Spencer alleges that: (1) the officers violated § 1983 by using excessive force and entering his trailer without a warrant and wrongfully arresting him in violation of the Fourth and Fourteenth Amendments; (2) the Village of Wheeling is liable under § 1983 because it failed to properly train and supervise its officers pursuant to a custom, policy, or practice of disregarding the rights of hearing-impaired residents; (3) the officers intentionally inflicted emotional distress in violation of state law; and (4) the officer and the Village of Wheeling are liable under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which outlines the responsibilities of law enforcement personnel when dealing with hearing impaired individuals, because they failed to provide him with an interpreter or communicate with him in the manner prescribed by the Rehabilitation Act. The defendants have moved to dismiss portions of Spencer's complaint and to strike certain paragraphs as impertinent and prejudicial.

## II. Discussion

### A. Motion to Dismiss

#### 1. Standard on 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

#### 2. § 1983 Claims Against the Village of Wheeling

To state a § 1983 claim against a municipality, a complaint must allege that a constitutional deprivation was caused by an official policy or custom. *See, e.g., Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978). Thus, a governmental entity violates § 1983: (1) if it has an express policy that, when enforced, causes constitutional deprivation; (2) if there is a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute custom or usage with the force of law; (3) if a person with final policymaking authority causes a constitutional injury. *See McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

The defendants contend that Spencer's § 1983 claims against the Village of Wheeling are deficient because they are conclusory and, in any event, a single incident of unconstitutional conduct allegedly perpetrated pursuant to an unconstitutional policy, custom, or practice of a governmental entity is not enough to state a claim under § 1983.

### a. Are Spencer's § 1983 Claims Against the Village of Wheeling Sufficiently Detailed?

Consideration of the defendants' argument regarding the complaint's level of specificity necessarily begins with the Supreme Court's decision in *Leatherman*, which rejected attempts to impose a heightened pleading standard for § 1983 claims and held that notice pleading is sufficient. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). "Notice pleading," however, is not synonymous with conclusory statements. As the Seventh Circuit has explained:

> Although Fed. R. Civ. P. 8 does not require detailed factual pleading, a plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury. "Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient . . . . The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts."

*McTigue v. City of Chicago*, 60 F.3d at 382, *quoting Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 736 (7th Cir. 1994).

Here, Spencer's complaint contains exceptionally extensive facts regarding the events on the day of his arrest. In contrast, the allegations regarding the alleged existence of the Village of Wheeling's official policy regarding arrests of individuals in similar circumstances to Spencer's are conclusory. Specifically, Spencer simply states that the Village of Wheeling failed to properly train and supervise the defendant officers "on when the use of . . . force is necessary

and/or appropriate, which evinces a custom, policy, or practice by the Village of Wheeling" and that the malicious and unconstitutional actions of the defendant officers show a "policy, practice and custom of encouraging and condoning such acts."

Thus, Spencer is essentially arguing that the Village of Wheeling by definition must have an unconstitutional policy because the Village's officers allegedly violated his rights. This argument is not enough to state a claim under § 1983 as it is based on a supposition as opposed to any actual factual allegations regarding the existence of an official policy. The court stresses that it is not imposing a fact-pleading requirement on Spencer. He can plead conclusions, but those "conclusions must provide the defendant[s] with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, (7th Cir. 1995); *see also Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996) ("something more than a conclusory allegation is necessary . . . . Still there must be sufficient facts pleaded to allow the court and the defendants to understand the gravamen of the plaintiff's complaint"); *McTigue v. City of Chicago*, 60 F.3d at 382-83 ("Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient"). Thus, Spencer's § 1983 claims against the Village of Wheeling are dismissed without prejudice.

### b. Can a Single Incident of Allegedly Unconstitutional Conduct Constitute a Custom, Policy, or Practice?

The court anticipates that Spencer will attempt to amend the allegations against the Village of Wheeling so the court will address the Village's alternative argument in the interests of judicial efficiency. According to the defendants, a single incident of unconstitutional conduct allegedly perpetrated pursuant to an unconstitutional policy, custom, or practice of a

governmental entity can never support a § 1983 claim. This summary of the law is incorrect. It is true that "[o]ne cannot infer a custom or practice from a single incident." *Estate of Moreland v. Dieter*, — F. 3d —, Nos. 03-3734 & 03-3735, 2005 WL 77182 at *10 (7th Cir. Jan. 14, 2005). However, a single violation of federal rights can trigger § 1983 under *Monell* if the violation was a "highly predictable consequence" of the governmental entity's failure to act and the plaintiff shows that an unconstitutional policy, custom, or practice existed at the time the plaintiff's rights were violated. *See id.*; *see also Arlotta v. Bradley Center*, 349 F.3d 517 (7th Cir. 2003). Thus, the fact that Spencer's § 1983 claim is based on his arrest as opposed to a series of arrests of similarly situated individuals does not automatically doom his § 1983 claim against the Village of Wheeling.

### 3. Rehabilitation Act Claims Against All Defendants

The Rehabilitation Act prohibits federal grant recipients from discriminating against otherwise qualified handicapped individuals solely because of their disability. 29 U.S.C. § 794(a). To state a claim under the Rehabilitation Act, the plaintiff must allege that: (1) he is a handicapped individual under the Act; (2) he is otherwise qualified for the benefit sought; (3) he was discriminated against solely by reason of his handicap; and (4) the program or activity in question receives federal financial assistance. *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 199 (7th Cir. 1997).

Spencer alleges that the Village of Wheeling's police department failed to take appropriate measures to ensure that deaf and hard of hearing persons can communicate effectively with its personnel. He also alleges that the Village of Wheeling's police department receives federal funds " to effectuate [its] program or activity of enforcing the laws for the

Village of Wheeling." He thus concludes that the individual defendants as well as the Village of Wheeling are liable under the Rehabilitation Act.

In response, the defendants argue that Spencer's Rehabilitation Act claims against the individual defendants are fatally flawed because there is no individual liability under the Act. This is correct, so the Rehabilitation Act claims against the individual defendants are dismissed with prejudice. *See EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir.1995).

The defendants also contend that Spencer's Rehabilitation Act claims against the Village of Wheeling must be dismissed because the complaint does not allege that the events alleged in the complaint were related to a specific program sponsored by the Village of Wheeling and paid for at least in part with federal funds. The Rehabilitation Act, however, does not impose a heightened pleading standard upon plaintiffs. *See Chisolm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1280 (N.D. Ill. 1996).

Moreover, at the pleading stage, a plaintiff will seldom be able to specifically allege the intricacies of the defendants' use of federal assistance. *See Byers v. Rockford Mass Transit Dist.*, 635 F.Supp. 1387, 1390 (N.D. Ill. 1986). Finally, at the motion to dismiss stage, the type of detailed allegations suggested by the defendants are simply unnecessary. See *In Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1234 n.13 (7th Cir. 1980) ("an allegation that the defendants received federal financial assistance [is] probably sufficient to apprise the defendants of the grounds of his [Rehabilitation Act] claim"); *Treadwell v. St. Joseph High School*, No. 98 C 4906, 1999 WL 753929 at *4 (N.D. Ill. Sep. 15, 1999) (denying motion to dismiss where the plaintiff alleged that the defendant is a recipient of federal financial assistance); *Peterson v. Holy*

*Cross Hosp.*, No. 86 C 9000, 1987 WL 9565 at *2 (N.D. Ill. Apr. 14, 1987) (since the court must draw all reasonable inferences in the plaintiff's favor at the motion to dismiss stage, denial of the defendants' motion to dismiss was proper since it was possible that the federal assistance received by the defendants had a sufficient relationship to the alleged discrimination); *Byers v. Rockford Mass Transit Dist.*, 635 F.Supp. at 1390 (the nexus between the use of federal funds and the discrimination alleged by a plaintiff "must be decided case by case based on the underlying facts surrounding the federal funding . . . . Stated another way, the issue of program specificity cannot be properly analyzed in the abstract, but instead requires a concrete set of facts . . . . As long as some federal funding is alleged, then, the program specificity issue is more properly the subject of a summary judgment motion") (internal citations omitted); *Lynn v. City of Chicago*, No. 86 C 2207, 1986 WL 8033 at *6 (N.D. Ill. Jul. 15, 1986) (denying motion to dismiss where the plaintiff alleged that Chicago's police department discriminated against him and received federal funds because the court could not determine whether the City's receipt of federal funds in conjunction with the operation of its Police Department was a "program" under the Rehabilitation Act at the motion to dismiss stage). Accordingly, the Rehabilitation Act claims against the Village of Wheeling survive the motion to dismiss.

### B.  Motion to Strike

Finally, the defendants ask the court to strike what they characterize as ambiguous language regarding punitive damages. They also contend that many of the allegations in the complaint should be stricken because they are "more fitting of a pulp fiction novel than a federal complaint," prejudice the defendants, and have little bearing on the case.

### 1. Punitive Damages

Municipalities are immune from punitive damages imposed under the civil rights laws. *City of Newport v. Fact Concerns, Inc.*, 453 U.S. 247, 271 (1981); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir.1994) (the punitive damages rule of *City of Newport* applies to § 1983 and § 1981 actions). Moreover, Illinois has reaffirmed immunity for its local governments in the Illinois Local Government and Governmental Employee Tort Immunity Act, 745 ILCS § 10/2-102. *Agnew v. Board of Educ. of City of Chicago*, No. 97 C 5993, 1998 WL 386155 at *6 (N.D. Ill. Jul. 07, 1998). Thus, the Village of Wheeling is immune from any punitive damages award, so any request for such damages is stricken with prejudice.

### 2. Rule 12(f) Motion to Strike

A court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). The defendants point to allegations such as Spencer's claim that he was "peacefully ensconced" in his trailer before his arrest, the description of Spencer's ex-girlfriend's expression as "smug," and Spencer's claim that the officers who arrested him were "sarcastic," "cavalier," and "dismissive of [his] obvious distress." According to the defendants, these allegations should be stricken because they are subjective, hyperbolic, have little bearing on the case, and are prejudicial.

Motions to strike under Rule 12(f) are disfavored and usually denied. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 109 F.Supp.2d 905, 907 (N.D. Ill. 2000). To prevail on a Rule 12(f) motion to strike, the defendants must demonstrate that the allegations at issue do not bear on the subject matter of the litigation and will prejudice them. *See, e.g., NOW, Inc. v. Scheidler*, 897 F.Supp. 1047, 1087 n.28 (N.D. Ill.1995) ("[t]o strike portions of a complaint, the

allegations being challenged must be so unrelated to plaintiff's claims as to be void of merit and unworthy of any consideration" and "must be prejudicial to the movant." (internal citations omitted).

It is true that the entire complaint is unusually detailed given the notice pleading standard used in federal court. *See* Fed. R. Civ. P. 8(a)(2) (a complaint should be a short and plain statement of the claim showing that the pleader is entitled to relief). Indeed, it reads more like a plaintiff's deposition taken in a § 1983 excessive force case than a federal court complaint. Nevertheless, the allegations in Spencer's complaint describe his view of the events surrounding his arrest. The fact that this view is unflattering to the defendants and is extremely detailed is not a valid reason to require Spencer to shorten his complaint as allegations in a complaint cannot be stricken merely because a defendant disagrees with them. *See Manuel v. Lucenti*, No. 04 C 2531, 2004 WL 2608355 at *2-3 (N.D. Ill. Nov 16, 2004). Accordingly, the defendants' motion to strike pursuant to Rule 12(f) is denied.

## III. Conclusion

For the above reasons, the defendants' motion to dismiss and strike is granted in part and denied in part. Specifically, Spencer's § 1983 claims against the Village of Wheeling are dismissed without prejudice, his Rehabilitation Act claims against the individual defendants are dismissed with prejudice, and his Rehabilitation Act claims against the Village of Wheeling survive the motion to dismiss. In addition, the defendants' motion to strike Spencer's request for punitive damages from the Village of Wheeling is granted, but the motion to strike the allegations in Spencer's complaint pursuant to Rule 12(f) is denied.

Spencer may file a second amended complaint by March 11, 2005, consistent with counsel's Rule 11 obligations and this order.

DATE: March 3, 2005

_____
Blanche M. Manning
United States District Judge