**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN K. SPENCER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | 04 C 5048 |
| | ) | |
| OFFICER JOSEPH DAWSON, et al., | ) | |
|     Defendants. | ) | |

**MEMORANDUM AND ORDER**

After a two-week trial, a jury rejected plaintiff Steven Spencer's claims that his arrest was wrongful, the defendant officers used excessive force on him, and the Village of Wheeling's policies regarding deaf individuals violate the Rehabilitation Act. Spencer's motion for a new trial is before the court. For the following reasons, the motion is denied.

**Background**

For the purposes of this order, the court assumes familiarity with this case and its prior orders and will thus provide only a brief recap of the essential facts. Plaintiff Steven Spencer is deaf and communicates primarily through the use of sign language. Spencer and his former girlfriend, Aliza Meyer, who is also deaf and communicates using sign language, co-owned a trailer home in Wheeling, Illinois. On March 25, 2003, Allen Meyer, Aliza's father, arrived at the trailer to speak with Spencer about selling it since Spencer and Aliza had split up. The two men had a falling out and each called the police.

Officers Dawson and Conway arrived at the scene to investigate. Matters went downhill, and eventually Spencer was arrested. The officers testified that they arrested Spencer because Officer Conway thought Spencer was about to punch him in the face. On the other hand,

Spencer testified that he was merely using sign language when he made the gestures that the officers believed were threatening and that he never threatened the officers.

According to Spencer, a new trial is appropriate because: (1) the defendants violated the court's rulings on the motions in limine by eliciting testimony from Allen Meyer that the police were aware of Spencer's address because he had a history of violence and from Thomas Walton, the defendant's expert, that the police knew of Spencer's violent history; (2) the trial was unfair because the court refused to allow him to ask the defendants about their knowledge of and compliance with the Illinois Mental Health and Developmental Disabilities Code and refused to approve his corresponding jury instructions; (3) the trial was unfair because he was not allowed to introduce into evidence two documents he used when cross-examining Walton; (4) the jury's verdict was against the manifest weight of the evidence; and (5) the court erred in granting the defendants' motion for summary judgment in favor of the Village of Wheeling.

In response, the defendants contend that Spencer's motion is untimely. Alternatively, they contend that the court's evidentiary rulings were fair, the jury's verdict reflected the clear weight of evidence presented at trial, Spencer is attempting to improperly attack the court's prior ruling on the defendants' motion for summary judgment, and Spencer cannot move for judgment as a matter of law under Rule 50 at this point in the proceedings.

## **Standard of Review**

The court will grant a new trial if the jury's verdict was "against the clear weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003); *see Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993) ("[C]ivil litigants are entitled to a fair trial, not a perfect one"). When considering a motion for a new

trial, the court must give "the jury's verdict great deference." *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994).

Thus, the court will not overturn a jury verdict if it has a reasonable basis in the record, viewing the evidence in the light most favorable to the prevailing party and leaving issues of credibility and weight to the jury. *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). In turn, if a jury instruction is at issue, a party is entitled to a new trial if the court finds that "(1) the instruction inadequately states Seventh Circuit law; and (2) the error likely confused or misled the jury causing prejudice to the movant." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir.2000).

## **Discussion**

The court begins with the defendants' argument that Spencer's motion for a new trial is untimely. Rule 59(b) provides that "[a]ny motion for a new trial shall be filed no later than 10 days after the entry of the judgment." Here, the jury returned its verdict on June 29, 2007. Immediately thereafter, the court asked Spencer's counsel if he intended to file post-trial motions so it could set a briefing schedule. When counsel indicated that he wanted to file post-trial motions, the court allowed him to specify when he wanted to file his motions and set a briefing schedule based on counsel's requested date (twenty-one days, which was subsequently extended another seven days at counsel's request). The court then entered judgment on July 2, 2007. On July 27, 2007, Spencer filed a motion for a new trial.

Spencer acknowledges that his motion for a new trial is untimely under Rule 59, but contends that the "unique circumstances" doctrine excuses his untimely filing. *Eady v. Foerder*, 381 F.2d 980 (7th Cir. 1967). Under the "unique circumstances" doctrine in *Eady*, "when a

judge extends the time within which to file an application for a new trial, and counsel relies to his detriment on that extension, the 'unique circumstances' of this reliance allows the court to dispose of the motion before it." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1568 (7th Cir. 1990) (en banc); *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179 (1989) (an untimely filing may be excused if a party "has received specific assurance by a judicial officer").

The rule in *Eady* does not necessarily save Spencer, as the Seventh Circuit has recently noted that the unique circumstances "doctrine's continued validity has been seriously questioned both in this court, see *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1573 (7th Cir. 1990) (en banc) (Manion, J., joined by Cummings, Posner, Coffey, and Easterbrook, JJ., and Eschbach, Senior J., concurring), and in the Supreme Court, *see Houston v. Lack*, 487 U.S. 266, 282, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), (Scalia, J., joined by Rehnquist, C.J., and O'Connor and Kennedy, JJ., dissenting)." *Robinson v. City of Harvey*, 489 F.3d 864, 870-71 (7th Cir. 2007). These cases have, as the Seventh Circuit has recognized, "[prompted] the observation that the 'unique circumstances' doctrine is, at best, on life support." *Id*. at 871, *quoting* 16A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3950.3 (3d ed. supp. 2006) (internal quotations omitted).

The doctrine is only available "when there is a genuine ambiguity in the rules to begin with, and the court resolves that ambiguity in the direction of permitting additional time to appeal." *Id*. With respect to motions for a new trial, the Seventh Circuit has held that because Rule 6(b) expressly prohibits extensions of time to file Rule 59 motions, the ambiguity required to invoke the unique circumstances doctrine cannot exist. *Id*.; *Varhol v. Nat'l R.R. Passenger*

*Corp.*, 909 F.2d at 1568 ("Rule 6 flatly prohibits extensions of the 10-day time period to file a motion for a new trial").

The court also notes that in any event, the doctrine requires "an act of affirmative misrepresentation by a judicial officer" regarding a due date. *Green v. Bisby*, 869 F.2d 1070, 1072 (7th Cir. 1989); *see also Bailey v. Sharp*, 782 F.2d 1366, 1369 (7th Cir. 1986) (*Eady* requires a lawyer to "*actually* rel[y] on the affirmative misstatement of the district judge .... If counsel had read *Eady* correctly, he would have realized that it was incumbent upon him to seek clarification. In short, it is clear that it was not the judge's misstatement but counsel's misreading of the law that led to his failure to file on time") (emphasis in original); *U.S. v. Boyd*, 172 F.R.D. 363, 366 (N.D. Ill. 1997) ("[t]he defendants, therefore, have to show that they relied upon erroneous information from [the court] to them about the amount of time they would have. It is not enough that they were misled, they have to be misled by the court").

A minute order granting a request for an extension of time to file Rule 59 motions is not the type of specific assurance that makes the unique circumstances doctrine come into play. *Properties Unlimited, Inc. Realtors v. Cendant Mobility Services*, 384 F.3d 917, 921 (7th Cir. 2004) ("[m]erely entering a minute order that apparently extends the time for filing a motion under FED. R. CIV. P. 59, for example, is not enough to count as a 'specific assurance' from the court"); *Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1995) (the unique circumstances doctrine "requires something more affirmative than a minute order granting a party's motion for extending the time to file a Rule 59 motion"); *Green v. Bisby*, 869 F.2d 1070, 1072 (7th Cir. 1989) ("[t]he mere entry of a minute order, however, is not an act of affirmative representation by a judicial officer").

This rule is based on the Seventh Circuit's recognition that counsel is the master of his own case and is presumed to be aware of the rules and the effect of requests for extensions. *See Hope v. United States*, 43 F.3d at 1143. Thus, neither the district court nor opposing counsel are required to point out potential timeliness concerns to a party seeking an extension. *See id*. at 1143-44 (the district judge and opposing counsel need not "sort through post-judgment motions and advise the moving party whether his appeal clock remains ticking."). This is especially true where, as here, counsel himself chose the date that he wanted to file his "post-trial motions" and the court and opposing counsel agreed to the briefing schedule specifically requested by plaintiff's counsel.

In short, Spencer cannot blame the court or opposing counsel for his own decision to ask for twenty-one days to file post-trial motions because the rules are unambiguous and the court did not affirmatively represent that Spencer was free to file an untimely Rule 59 motion for a new trial. Accordingly, Spencer's motion for a new trial under Rule 59 is denied as untimely.

Spencer also appears to be seeking relief under Rule 50, as his prayer for relief asks for judgment notwithstanding the verdict or, alternatively, a new trial. The defendants correctly note that after a jury trial and verdict, a motion for judgment as a matter of law may be renewed within ten days of the entry of judgment. Fed. R. Civ. P. 50(b). Setting aside the ten-day requirement, Spencer did not move for judgment as a matter of law during the trial, so he cannot renew a request for relief under Rule 50 now. Spencer did not comment on this issue in his reply brief, so the court assumes that he recognizes this problem. Be that as it may, he is not entitled to relief under Rule 50.

In any event, Spencer's request for post-trial relief would have failed on the merits. With respect to Allen Myer's testimony, the testimony that Spencer takes issue with was elicited in response to questions from Spencer's counsel, not defense counsel. Clearly, defense counsel is not responsible for questions asked by plaintiff's counsel. The court also disagrees with Spencer's characterization of questions asked by defense counsel. It held numerous sidebars as the evidence came in so it could apply its in limine rulings to the questions defense counsel wanted to ask, and counsel and Meyer adhered to the court's rulings. Spencer's arguments about Meyer's testimony are, therefore, unpersuasive.

With respect to Spencer's desire to ask the defendants about their knowledge of and compliance with the Illinois Mental Health and Developmental Disabilities Code, Spencer was permitted to ask the defendants about their actions on the day of Spencer's arrest and did so at length. Either the defendants' actions complied with the law or they did not, regardless of whether the officers could recite the applicable statute from the witness stand. With respect to the corresponding jury instruction, both parties agreed to withdraw their competing instructions, so Spencer cannot claim that the court erred in not giving his proposed instruction.

Next, Spencer argues that the trial was unfair because he was not allowed to introduce two documents used when cross-examining Thomas Walton, the defense expert, into evidence. These documents were a "training key" from the International Association of Chiefs of Police and a printout from the Department of Justice in a "question and answer" form about the Americans With Disabilities Act (a statute not at issue in this § 1983 and Rehabilitation Act case). The court allowed Spencer's counsel to question Walton about these documents despite the defendants' concerns about hearsay. As the court ruled during trial, however, the fact that

Walton considered these documents when formulating his opinion did not mean that they were automatically admissible. *See* Fed. R. Evid. 703. The court instructed the jury on the applicable law and continues to adhere to its belief that admitting the disputed documents into evidence would have been extremely confusing to the jury since neither document accurately reflected the governing law.

Next, Spencer argues that the jury's verdict was against the manifest weight of the evidence. This argument is, in essence, a claim that the jury got it wrong because his version of the facts was the correct one. When considering this argument, the court must review the facts in the light most favorable to the jury's verdict and will not overturn that verdict if a reasonable basis exists in the record to support it. *See, e.g., Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000). The court also cannot second-guess the jury's credibility determinations. *See, e.g., Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 712 (7th Cir. 2004).

Spencer contends that the evidence showed that the officers were unable to communicate effectively on the day of his arrest and that the officers should have provided a sign language interpreter. The court vividly recollects the evidence presented during the trial. Spencer rejected the officers' offer to communicate via an interpreter (Allen Meyer) when they first arrived at the trailer by saying one was unnecessary because he could communicate using total communication, including lip reading and written notes if necessary. He then went on to communicate with the officers, presented his side of the events at the trailer, and ultimately ended up getting pepper sprayed. Based on this evidence, the jury was not required to accept Spencer's current position that he rejected Meyer's interpretation services because he believed that Meyer was biased but he actually needed an interpreter during the entire interaction with the police.

It is true that during the period of time that Spencer was blinded by pepper spray, Spencer could not communicate by lip reading. However, given that evidence showed that Spencer knew who had sprayed him and that Spencer began to thrash at the officers violently, the record supports the jury's conclusion that Spencer's actions, not the lack of an interpreter, was at the root of the situation. The evidence also showed that when Spencer specifically asked for an interpreter the officers radioed for one and one was provided. Similarly, Spencer's claim that the officers lacked probable cause to arrest him because a reasonable officer would have known that Spencer was communicating via sign language instead of threatening to punch the officer, is amply supported by the officers' testimony, which the jury was entitled to accept.

In short, Spencer testified that he was upset and had vented his anger inappropriately by making holes in the walls of his trailer with his fists, feet, and head, but never tried to hit anyone and was merely using sign language to communicate with the officers. In contrast, the officers testified that Spencer was enraged and tried to punch Officer Conway in the face, and then became violent instead of subdued after they were forced to use pepper spray. The jury also heard from Allen and Aliza Meyer, who were present during part of the incident at the trailer. In addition, the jury heard testimony about Spencer's expressed ability to communicate without assistance, and the officers' reaction to his subsequent request (after he was cuffed) for an interpreter. Although Spencer's version of events supported his excessive force, wrongful arrest, and Rehabilitation Act claims, the jury's verdict shows that they found that the officers' testimony was credible. Given this finding, Spencer's motion for a new trial must fail.

This brings the court to Spencer's final argument in support of his motion for a new trial: that the court erred in granting the defendants' motion for summary judgment as to Spencer's

*Monell* claims.  This is not a proper subject for a motion for a new trial since this issue was never before the jury.  Moreover, Spencer cannot seek reconsideration of the court's summary judgment ruling at this point in the proceedings.

## **Conclusion**

For the above reasons, Spencer's motion for a new trial [#135] is denied.


DATE:   September 28, 2007  _____
Blanche M. Manning
United States District Judge